UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUSEBIO C.H.S.,[1] | No. 1:26-cv-04389-TLN-AC |
| Petitioner, | A# 246-737-520 |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Eusebio C.H.S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").[2]  (ECF No. 1.)  Respondents filed an opposition.  (ECF No. 7.)  For the reasons set forth below, the Petition is GRANTED.[3]

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    *Pro se* pleadings are given the benefit of liberal construction. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

[3]    On June 12, 2026, this Court issued a minute order granting the Petition and ordering Petitioner's immediate release.  (ECF No. 9.)  This Order explains the Court's reasoning.

1

## I.    FACTUAL BACKGROUND[4]

This matter arises out of Petitioner's challenge to his civil immigration detention. About March 3, 2023, Petitioner entered the United States using the CBP One Application to seek asylum. (ECF No. 1 at 5, 48.) Immigration officials processed Petitioner, instituted removal proceedings against him, and released him into the country to pursue his asylum application. (*Id.* at 5, 43.)

Over the last three years, Petitioner has followed the legal process to seek asylum in this country. (*Id.* at 11.) Petitioner paid taxes, established a residence, obtained work authorization and a driver's license, applied for asylum, obtained temporary protected status ("TPS") while available, and complied with immigration requirements. (*Id.* at 7, 11.) Petitioner's asylum application and removal proceedings remain pending with the government; he is not subject to an order of removal.[5] Neither party identifies any criminal history for Petitioner.

On April 8, 2026, Petitioner attended an annual U.S. Immigration and Customs Enforcement ("ICE") appointment. (*Id.* at 6.) Petitioner completed his check-in and received his appointment date and time for the next year. (*Id.*) About 20 minutes later, an ICE official approached Petitioner claiming he needed to update Petitioner's data, although Petitioner explained his information was confirmed and correct. (*Id.*) Thereafter, the ICE official asked Petitioner a series of questions about his immigration history. (*Id.* at 7.) Petitioner supplied the requested information regarding social security card, work permit, driver's license, bank account, and residence; he confirmed he possessed documentation valid through 2029. (*Id.*) Petitioner explained that he has followed the lawful process for applying for asylum, showed him documentation relating to his asylum case, and provided his lawyer's contact information. (*Id.*) Petitioner describes the ICE official as becoming more "upset" over the course of their visit. (*Id.*) The ICE official then told Petitioner he was taking him to an area where an immigration judge would see him. (*Id.*) Instead, Petitioner was detained, without being informed he was being

---

[4]    Respondents did not dispute the facts provided by Petitioner. (*See generally* ECF No. 7.)

[5]    Automated Case Information, U.S. Department of Justice, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited June 15, 2026).

2

detained, or told the reason for his detention.  (*Id.* at 8.)  Petitioner was taken to an overcrowded cell with about 30 other people.  (*Id.*)  That is where Petitioner says his "nightmare began."  (*Id.*)  Petitioner was shackled and he chronicles repeated transfers to different detention centers, abhorrent detention conditions, no communication or information from officials as to what was happening to him, and an inability to contact his family.  (*Id.* at 8–10.)  It was not until Petitioner arrived at the Golden State Annex in California on May 16, 2026 — over a month and a half into his detention — that he was able to contact his family for the first time to tell them he was "safe and alive."  (*Id.* at 10.)

Respondents detained Petitioner for over two and a half months.  (*See id.* at 5.)  In that time, Respondents did not provide Petitioner any hearing as to his detention.  (*Id.*)  Petitioner now alleges his civil immigration detention without a hearing is unconstitutional.  (ECF No. 1.)

**II.    STANDARD OF LAW**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention without a hearing violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 21–22.)  Respondents note that Petitioner "is in the category of cases in which the Court has typically ordered immediate release" but maintains their position,

///

3

which has been repeatedly rejected by this Court, that Petitioner is subject to mandatory detention without a hearing under 8 U.S.C. § 1225(b)(2).  (ECF No. 7 at 2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.  Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest.  "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  He has resided in the United States for three years, where he has built a life, established a stable residence, fostered community ties, and

4

followed the lawful process to apply for asylum in this country. Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."). It is uncontested that Petitioner has followed the conditions of his release; in fact, he was detained while complying with a routine immigration check-in. Moreover, even if Petitioner is removable, or his liberty is revocable, he is still entitled to safeguards throughout those processes. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693; *Rico-Tapia*, 2025 WL 2950089, at *8.

In opposition, Respondents argue Petitioner has no right to freedom because his detention is mandated by statute. (ECF No. 7 at 1 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), *reaffirmed in DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).) However, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023). *Thuraissigiam* "does not foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections." *Id.* at 1172.

In any event, Petitioner's detention is not mandated by statute. Consistent with this Court's copious prior rulings, and other courts across the Ninth Circuit, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2); rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including a bond hearing.[6] *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-

---

[6] 8 U.S.C. § 1226(a) governs standard removal proceedings under section 240 of the Immigration and Nationality Act ("INA") (*see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025)), while 8 U.S.C. § 1225(b) governs expedited removal proceedings. The two statutes cannot be applied

5

EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

Thus, Petitioner maintains his liberty interest protected by the Due Process Clause. The Court next turns to the procedural safeguards that were owed to Petitioner.

### B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for two and a half months without any opportunity to be heard as to the justification of his detention. He is unable to work, he was unable to communicate with his family for the majority of his detention, he describes abhorrent detention conditions for most of his time in immigration detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is

---

simultaneously. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025). Here, Petitioner's charging document states that his removal proceedings are "under section 240 of the [INA]," further supporting the finding that Petitioner falls squarely within standard removal proceedings governed by § 1226(a). (ECF No. 1 at 43.)

not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.  Here, Petitioner is not subject to any order of removal; his immigration proceedings are pending.  On the record before this Court, Petitioner appears to have no criminal history.  And Respondents do not contend that Petitioner is a danger or a flight risk.  Indeed, immigration authorities would have found that Petitioner was not a danger or a flight risk in order to release him from custody in 2023.  *See* 8 C.F.R. § 1236.1(c)(8). Respondents do not point to any facts or changed circumstances for Petitioner which would alter that finding.  Rather, Petitioner shows three years of compliance with immigration requirements and the law.  Without any showing of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest.  The Court also notes the apparent flagrant circumvention of safeguards here.  According to Petitioner, the ICE official told Petitioner he was going to a location to meet with an immigration judge, when in fact Petitioner was detained and never presented before an immigration judge.  It is deeply concerning to this Court that a government official may be engaging deceitful conduct while detaining an individual without any process, notice of their rights, or any ability for the individual to contact an attorney.  Without any procedural safeguards, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest in detaining Petitioner without process is nil, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondents.  Indeed, they are the very processes owed to Petitioner under 8 U.S.C. § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker.  The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."  (*See generally* ECF No. 7.)

Yet, Respondents did not provide Petitioner any notice — it appears Respondents did not even inform Petitioner in real-time that he was being detained.  Nor did Respondents provide Petitioner with a pre- or post-deprivation hearing in two and a half months of detention.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment.  Accordingly, IT IS HEREBY ORDERED:

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[7]

2.  Respondents were ordered to immediately release Petitioner from custody under the same conditions he was released prior to his current detention.  (ECF No. 9.)  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  Respondents must file a **notice of compliance** with this Order **by June 18, 2026.**

4.  To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing

---

[7]    Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 22.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

5. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATED: June 16, 2026.

Troy L. Nunley
United States District Judge